UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

     v.

PATRICK RONEY,

            Defendant.

**DECISION AND ORDER**
10-CR-130S

## I. INTRODUCTION

Presently before this Court is Defendant Patrick Roney's Motion for Sentence Reduction under the federal compassionate-release statute, which the government opposes. See 18 U.S.C. § 3582 (c)(1)(A). For the reasons discussed below, Roney's motion is denied.

## II. BACKGROUND

On June 9, 2010, Roney waived indictment and pleaded guilty to a single-count information that charged him with possessing child pornography in violation of 18 U.S.C. § 2252A (a)(5)(B). (Docket Nos. 20-22.) This charge stemmed from Roney's possession of 512 images and four videos of child pornography on 12 CD/DVDs, one external hard-drive, and 2 floppy disks. (Plea Agreement, Docket No. 21, ¶ 7.) Some of these images and videos involved sadistic or masochistic conduct and depictions of violence and some depicted prepubescent children younger than 12 years of age. (Id.) This conviction followed Roney's 1996 conviction in state court for sexual abuse in the second degree, an offense involving a minor, in violation of New York Penal Law § 130.60. (Id.)

On May 26, 2011, this Court sentenced Roney to 168 months' imprisonment, supervised release for life, a $100 special assessment, and no fine or restitution. (Docket

Nos. 50, 53.)  He is presently serving his sentence at FMC Rochester, with a release date

of October 24, 2021.[1]

On May 15, 2020, Roney moved under 18 U.S.C. § 3582 (c)(1)(A)(i) for a reduction

in sentence to time served to allow him to leave FMC Rochester and begin serving the

supervised release portion of his sentence, to include a period of home confinement, if

deemed necessary.   He contends that such relief is warranted because he is at

heightened risk to develop COVID-19 while incarcerated given his medical conditions.

(Docket No. 56.)  The government opposes Roney's motion.  (Docket No. 60.)

### III. DISCUSSION

### A.      Compassionate Release under 18 U.S.C. § 3582 (c)(1)(A)(i)

"A court may not modify a term of imprisonment once it has been imposed except

pursuant to statute."  United States v. Gotti, 02 CR 743-07 (CM), 2020 WL 497987, at *1

(S.D.N.Y. Jan. 15, 2020).  One such statute is 18 U.S.C. § 3582 (c)(1)(A)(i) which, as

amended by the First Step Act of 2018,[2] provides as follows:

> The court may not modify a term of imprisonment once it has
> been imposed except that—in any case—the court, upon
> motion of the Director of the Bureau of Prisons, or upon
> motion of the defendant after the defendant has fully
> exhausted all administrative rights to appeal a failure of the
> Bureau of Prisons to bring a motion on the defendant's behalf
> or the lapse of 30 days from the receipt of such a request by
> the warden of the defendant's facility, whichever is earlier,
> may reduce the term of imprisonment (and may impose a term
> of probation or supervised release with or without conditions
> that does not exceed the unserved portion of the original term

---

[1] See https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (last visited May 28, 2020).

[2] Congress amended 18 U.S.C. § 3582 (c)(1)(A) in the First Step Act of 2018 to allow prisoners to bring their own motions for compassionate release after proper exhaustion.  See Pub. L. No. 115-391, 132 Stat. 5194, 5222 (2018).  The previous version of the statute permitted only the Bureau of Prisons to bring compassionate-release motions.  See, e.g., United States v. Monzon, No. 99 Cr. 157, 2020 WL 550220, at *1 n.1 (S.D.N.Y. Feb. 4, 2020) (explaining the First Step Act amendment); United States v. Gotti, 02 CR 743-07 (CM), 2020 WL 497987, at *1 (S.D.N.Y. Jan. 15, 2020) (same).

of imprisonment), after considering the factors set forth in section 3553 (a) to the extent that they are applicable, if it finds that—(i) extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

The defendant carries the burden of showing that he or she is entitled to a sentence reduction under the statute.  See United States v. Ebbers, (S4) 02-CR-1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020).  A defendant proceeding on his or her own motion may meet that burden by demonstrating (1) that he or she satisfied the statutory exhaustion requirement, (2) that extraordinary and compelling reasons exist for a sentence reduction, and (3) that a sentence reduction is consistent with the applicable Sentencing Guidelines provisions.  See 18 U.S.C. § 3582 (c)(1)(A)(i); United States v. Perez, 17 Cr. 513-3 (AT), 2020 WL 1546422, at *2 (S.D.N.Y. Apr. 1, 2020).  If the court finds, after consideration of the applicable 18 U.S.C. § 3553 (a) factors, that the defendant has met this burden, it may reduce the defendant's sentence under the statute.  See 18 U.S.C. § 3582 (c)(1)(A)(i); see also United States v. Gileno, No. 3:19-CR-161-(VAB)-1, 2020 WL 1307108, at *1-2 (D. Conn. Mar. 19, 2020).

The statutory exhaustion requirement is mandatory and "must be strictly enforced." United States v. Monzon, No. 99 Cr. 157, 2020 WL 550220, at *2 (S.D.N.Y. Feb. 4, 2020) (citing Theodoropoulos v. I.N.S., 358 F.3d 162, 172 (2d Cir. 2004)); United States v. Cassidy, 17-CR-116S, 2020 WL 1969303, at *3-8 (W.D.N.Y. Apr. 24, 2020) (finding exhaustion mandatory).  The exhaustion requirement is met when the earlier of two circumstances occurs: (1) the defendant fully exhausts all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion to modify an imposed term of

imprisonment on his or her behalf, [3] or (2) 30 days lapse from the date the warden of the defendant's facility receives the defendant's request to file such a motion on his or her behalf.  See 18 U.S.C. § 3582 (c)(1)(A).

Congress delegated to the Sentencing Commission the task of "describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction" under 18 U.S.C. § 3582 (c)(1)(A)(i).  See 28 U.S.C. § 994 (t).  The Commission, in turn, promulgated a Policy Statement concerning sentence reductions under 18 U.S.C. § 3582 (c)(1)(A) in § 1B1.13 of the United States Sentencing Guidelines.  The Commentary to that section contains four examples of circumstances that constitute "extraordinary and compelling reasons" for a sentence reduction:  "Medical Condition of the Defendant"; "Age of the Defendant"; "Family Circumstances"; and "Other Reasons".  See U.S.S.G. § 1B1.13.

At issue here are the "Medical Condition of the Defendant" and "Other Reasons"

---

[3] The Scparta court explained the administrative process before the Bureau of Prisons as follows:

> First, an inmate must request the warden of her facility to file a compassionate-release motion on her behalf.  28 C.F.R. § 571.61 (a). Second, if the warden denies the prisoner's request, she has 20 days to appeal to the BOP's Regional Director.  Id. § 571.63 (a) (providing that denials of compassionate-release requests are governed by the BOP's general Administrative Remedy Program, contained in 28 C.F.R. §§ 542.10-542.19); id. § 542.15 (a) ("An inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response.").  Third, if the Regional Director denies the prisoner's request, she then has 30 days to appeal to the BOP General Counsel.  Id. § 542.15 (a).  A decision from the General Counsel is the final step in the BOP's Administrative Remedy Program, id., and therefore "constitutes a final administrative decision," id. § 571.63 (b).

United States v. Scparta, 18-cr-578 (AJN), 2020 WL 1910481, at *7 (S.D.N.Y. Apr. 20, 2020).

examples.  The "Medical Condition of the Defendant" example provides as follows:

Medical Condition of the Defendant—

(i)     The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory).   A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required.  Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease and advanced dementia.

(ii)    The defendant is—

(I)     suffering from a serious physical or medical condition,

(II)    suffering from a serious functional or cognitive impairment, or

(III)   experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 comment n. 1 (A).

The "Other Reasons" example is a catch-all provision encompassing "an extraordinary and compelling reason other than, or in combination with, the [other] reasons described."[4]  Id. n. 1 (D).

As it relates to the requirement that a sentence reduction be consistent with the

---

[4] The Bureau of Prisons has implemented a Program Statement to guide its own implementation of 18 U.S.C. § 3582 (c)(1)(A).  See Bureau of Prisons Program Statement 5050.50, eff. January 17, 2019 (available at https://www.bop.gov/PublicInfo/execute/policysearch?todo=query# (last visited May 28, 2020)). This Court assumes without deciding that this Program Statement is non-binding as it relates to the "Other Reasons" provision of U.S.S.G. § 1B1.13 comment n. 1 (D), and that it is therefore not constrained by what the Director of the Bureau of Prisons might consider other extraordinary and compelling reasons for sentence reduction.  See, e.g., United States v. Marks, 03-CR-6033L, 2020 WL 1908911, at *5-7 (W.D.N.Y. Apr. 20, 2020) (finding that post-First Step Act, district courts are no longer bound by the specific categories warranting sentence reduction identified by the Sentencing Commission in U.S.S.G. § 1B1.13,

applicable Sentencing Guidelines provisions, U.S.S.G. § 1B1.13 is once again the

relevant provision.  It provides that a court may reduce a sentence if, after consideration

of the 18 U.S.C. § 3553 (a) factors, it determines that

> (1) (A)  extraordinary and compelling reasons warrant the reduction; or
>
>    (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559 (c) for the offense or offenses for which the defendant is imprisoned;
>
> (2)  the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142 (g); and
>
> (3)  the reduction is consistent with this policy statement.

See U.S.S.G. § 1B1.13.

Finally, district courts have broad discretion in deciding whether to grant or deny

motions for sentence reduction.  See Gileno, 2020 WL 1307108, at *2.

**B.      Roney's Motion for Sentence Reduction**

Roney has served 127 months of his 168-month sentence.  He is 61 years old and

suffers from numerous serious medical conditions that he claims make him highly

susceptible to contracting and dying from COVID-19.  He therefore seeks a reduction in

sentence to time served, which would permit him to leave FMC Rochester immediately

and begin serving the supervised release portion of his sentence.  If granted, Roney plans

to live in an unspecified residence in Amherst, N.Y.  (Memorandum of Law, Docket No.

56, p. 9.)  The government asks that Roney's motion be denied.

---

including affording any deference to the Director for purposes of U.S.S.G. § 1B1.13 comment n. 1 (D) ("Other Reasons")).

### 1. Exhaustion of Administrative Rights

As indicated above, 18 U.S.C. § 3582 (c)(1)(A) contains a threshold exhaustion requirement.  To satisfy this requirement, a defendant must demonstrate that either (1) he or she fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion to modify an imposed term of imprisonment on his or her behalf, or (2) 30 days have lapsed from the date the warden of the defendant's facility received the defendant's request to file such a motion on his or her behalf.  See 18 U.S.C. § 3582 (c)(1)(A).

For reasons discussed at length in two previous decisions (fully incorporated herein), this Court has found that the statutory exhaustion requirement is mandatory and cannot be excused.  See Cassidy, 2020 WL 1969303, at *3-8; United States v. Schultz, 17-CR-193S, 2020 WL 1872352, at *3-6 (W.D.N.Y. Apr. 15, 2020); see also United States v. Montanez, 15-CR-122-FPG, 2020 WL 2183093, at *2-11 (W.D.N.Y. May 5, 2020) (finding § 3582 (c)(1)(A)'s exhaustion requirement mandatory).

Section 3582 (c)(1)(A) unambiguously conditions a court's authority to modify a previously imposed sentence on satisfaction of its exhaustion provisions.  See United States v. Vence-Small, No. 3:18-cr-00031 (JAM), 2020 WL 1921590, at *3 (D. Conn. Apr. 20, 2020) ("Importantly, however, Congress conditioned the right of a defendant to file a motion for sentence reduction upon the defendant's first applying to the prison warden to file a motion on the defendant's behalf."); United States v. Fana, 1:19-cr-11-GHW, 2020 WL 1816193, at *5 (S.D.N.Y. Apr. 10, 2020) ("The language of this provision ("[t]he court may not") expressly prohibits the Court from granting relief unless the statutory

preconditions are satisfied.").   As a *statutory* exhaustion provision—one imposed by

Congress—§ 3582 (c)(1)(A)'s exhaustion requirement is not subject to judge-made

exceptions, as *judge-made* exhaustion requirements may be.  See Ross v. Blake, __ U.S.

__, 136 S. Ct. 1850, 1856-57, 195 L. Ed. 2d 117 (2016); see also Vence-Small, 2020 WL

1921590, at *4 (explaining that Ross "made clear that judges are not at liberty to add

judge-made exceptions to exhaustion requirements that are made mandatory by statute").

As the Ross court explained:

> No doubt, judge-made exhaustion doctrines, even if flatly
> stated at first, remain amenable to judge-made exceptions.
> But a statutory exhaustion provision stands on different
> footing.  There, Congress sets the rules—and courts have a
> role in creating exceptions only if Congress wants them to.
> For that reason, mandatory exhaustion statutes . . . establish
> mandatory exhaustion regimes, foreclosing judicial discretion.
> Time and again, this Court has taken such statutes at face
> value—refusing to add unwritten limits onto their rigorous
> textual requirements.

Id. (citations omitted); see also McCarthy v. Madigan, 503 U.S. 140, 144, 112 S. Ct. 1081,

117 L. Ed. 2d 291 (1992) ("Of 'paramount importance' to any exhaustion inquiry is

congressional intent.  Where Congress specifically mandates, exhaustion is required."

(citations omitted)).

Consequently, because Congress did not write any exceptions into § 3582

(c)(1)(A)'s exhaustion provisions (other than the 30-day lapse provision), those plain and

unambiguous provisions must be strictly enforced and are not subject to judge-made

exceptions.  See Theodoropoulos, 358 F.3d at 172 ("As a general rule, courts are required

to strictly enforce statutory exhaustion requirements."); Bastek v. Fed. Crop Ins. Corp.,

145 F.3d 90, 94 (2d Cir. 1998) ("Statutory exhaustion requirements are mandatory, and

courts are not free to dispense with them."); United States v. DeMaria, 17 Cr. 569 (ER),

2020 WL 1888910, at *3 (S.D.N.Y. Apr. 16, 2020) ("The plain language of [§ 3582 (c)(1)(A)] does not give this Court any flexibility in allowing waiver.").

Here, Roney submitted requests for a sentence modification to the warden of FMC Rochester in October 2019 and on April 2, 2020.  (Memorandum of Law, Docket No. 56, p. 3 n. 2.)  Thirty days having lapsed since the submission of these requests, this Court finds that Roney has satisfied the statutory exhaustion requirement, and the government does not contend otherwise.

### 2.  Extraordinary and Compelling Reasons for Sentence Reduction

Roney is a 61-year-old, wheelchair-bound man who suffers from numerous medical conditions, including Type II diabetes, obstructive sleep apnea, hypertension, serious heart conditions, asthma, and cirrhosis, all of which he claims makes him highly susceptible to contracting and dying from COVID-19.  (Memorandum of Law, Docket No. 56, p. 4; Presentence Report, Docket No. 52, ¶¶ 80-82.)  The medical records submitted in support of Roney's motion support the presence and severity of these conditions.[5]

But as serious as they are, Roney's medical conditions do not constitute extraordinary and compelling reasons for a sentence reduction under the medical-condition section of U.S.S.G. § 1B1.13.  None of his conditions is a terminal illness (i.e., a serious and advanced illness with an end of life trajectory), see U.S.S.G. § 1B1.13 comment n. 1 (A)(i); nor is any a serious condition, impairment, or age-related deterioration that substantially diminishes his ability to provide self-care, see U.S.S.G. §

---

[5] When Roney filed his motion for compassionate release, he also moved for leave to file supporting medical records under seal and provided a courtesy copy of those records to chambers.  (Docket No. 57.)  Though this Court granted Roney's request and has considered his medical records in resolving this motion, they were never filed on the docket.  (Docket No. 58.)  Consequently, to complete the record, defense counsel will be directed to file the medical records under seal consistent with this Court's order.

1B1.13 comment n. 1 (A)(ii).  See United States v. Korn, 15-CR-81S, 11-CR-384S, 2020
WL 1808213, at *3-6 (W.D.N.Y. Apr. 9, 2020).

As for the "Other Reasons" section of U.S.S.G. § 1B1.13 comment n. 1 (D), which
provides for relief if there exist extraordinary and compelling reasons for sentence
reduction other than (or in combination with) what is specifically prescribed, Roney argues
that his medical conditions make him highly susceptible to contracting and dying from
COVID-19.  See United States v. Resnick, 14 CR 810 (CM), 2020 WL 1651508, at *7
(S.D.N.Y. Apr. 2, 2020) (considering compassionate-release request based on a
defendant's high susceptibility to COVID-19 under the "catch-all" provision of U.S.S.G. §
1B1.13 comment n. 1 (D)).

Roney is correct that he is particularly vulnerable to COVID-19.  His serious cardiac
condition and diabetes alone make him generally more susceptible.  COVID-19, of
course, is the sweeping, potentially deadly, worldwide pandemic that required the
President of the United States to declare a national emergency on March 13, 2020.  The
Centers for Disease Control and Prevention ("CDC") has determined that individuals with
certain underlying medical conditions, particularly if not well controlled, are at high risk for
severe illness from COVID-19.[6]  See Jones v. Wolf, No. 20-CV-361, 2020 WL 1643857,
at *8 (W.D.N.Y. Apr. 2, 2020) (taking judicial notice that "for people of advanced age, with
underlying health problems, or both, COVID-19 causes severe medical conditions and
has increased lethality") (quoting Basank v. Decker, 20 Civ. 2518, 2020 WL 1481503, at
*3 (S.D.N.Y. Mar. 26, 2000)).  The identified medical conditions include moderate to

---

[6]  See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited May 28, 2020).

severe asthma, serious cardiac conditions, diabetes, and liver disease, all of which Roney

suffers from.[7]    Roney therefore falls into the high-risk category.

Some courts have found that inclusion in the high-risk category alone is enough to

warrant a sentence reduction, see, e.g., United States v. Zukerman, 16 Cr. 194 (AT),

2020 WL 1659880, at *5 (S.D.N.Y. Apr. 3, 2020) (collecting cases), but this Court has

not.  Rather, it has found, and continues to find, that the mere *possibility* of contracting a

communicable disease such as COVID-19, without any showing that the Bureau of

Prisons will not or cannot guard against or treat such a disease, does not constitute an

extraordinary or compelling reason for a sentence reduction under the statutory scheme.

See United States v. Stevens, 04-CR-222S, 2020 WL 2393306, at *6 (W.D.N.Y. May 12,

2020); Korn, 2020 WL 1808213, at *6; see also United States v. Raia, No. 20-1033, 2020

WL 1647922, at *2 (3d Cir. Apr. 2, 2020) ("the mere existence of COVID-19 in society

and the possibility that it may spread to a particular prison alone cannot independently

justify compassionate release, especially considering BOP's statutory role, and its

extensive and professional efforts to curtail the virus's spread"); United States v. Gagne,

No. 3:18-cr-242 (VLB), 2020 WL 1640152, at *4 (D. Conn. Apr. 2, 2020) (denying

compassionate release where the defendant failed to show "that the [Bureau of Prisons]

cannot adequately manage the [COVID-19] pandemic or treat her to a reasonable

degree"); United States v. Eberhart, Case No. 13-cr-00313-PJH-1, 2020 WL 1450745, at

*2 (N.D. Cal. Mar. 25, 2020) ("[g]eneral concerns about possible exposure to COVID-19

do not meet the criteria for extraordinary and compelling reasons for a reduction in

---

[7] See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited May 28, 2020).

sentence set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. § 1B1.13"); United States v. Zywotko, Case No. 2:19-cr-113-FtM-60NPM, 2020 WL 1492900, at *2 (M.D. Fla. Mar. 27, 2020) (denying compassionate release where "the BOP has implemented an action plan to mitigate the effect of COVID-19 and prevent potential transmissions into and throughout its correctional facilities"); Gileno, 2020 WL 1307108, at *4 ("Mr. Gileno has also not shown that the plan proposed by the Bureau of Prisons is inadequate to manage the pandemic within Mr. Gileno's correctional facility, or that the facility is specifically unable to adequately treat Mr. Gileno.").

The Bureau of Prisons has experience combatting infectious diseases and has developed and implemented a multi-point plan to battle COVID-19.  Preparations began in early 2020 when the Bureau of Prisons instituted its Pandemic Influenza contingency plan, specifically modified to fight COVID-19.[8]  This plan is based on guidance and directives from the World Health Organization, the Centers for Disease Control and Prevention, and other related agencies.  Under this plan, the Bureau of Prisons has implemented quarantine and isolation protocols, restricted inmate transfers, limited group gatherings, employed screening procedures, and suspended visitation and tours.[9]

These and other measures are constantly reassessed to further mitigate the exposure and spread of COVID-19 among the federal prison population.  And these measures appear to have proven effective at FMC Rochester: as of May 27, 2020, there

---

[8] See https://www.bop.gov/coronavirus/overview.jsp#bop_covid-19_response (last visited May 28, 2020).

[9] See https://www.bop.gov/coronavirus/covid19_status.jsp (last visited May 28, 2020).

have been no reported inmate cases and only one staff case (now recovered).[10]  This

places FMC Rochester among the Bureau of Prisons facilities with the fewest COVID-19

cases.[11]

Thus, although Roney has demonstrated that he falls firmly in the high-risk group,

he nonetheless alleges nothing more than the general possibility that he could contract

COVID-19, and he has made no showing that FMC Rochester's plan and efforts to

combat the disease are inadequate or that FMC Rochester is unable to adequately treat

him if he falls ill.[12]  To the contrary, it appears that the BOP's efforts at FMC Rochester

are working.  Thus, this Court finds that Roney fails to demonstrate an extraordinary and

compelling reason for a sentence reduction based on COVID-19.  See Stevens, 2020 WL

2393306, at *6-7 (denying compassionate release to defendant in facility with no reported

cases alleging only the general possibility of contracting COVID-19); Korn, 2020 WL

1808213, at *6-8 (denying compassionate release to defendant who failed to show

inadequacy in Bureau of Prisons plan or ability to treat him); see also Gileno, 2020 WL

1307108, at *4; Eberhart, 2020 WL 1450745, at *2; Zywotko, 2020 WL 1492900, at *2;

Gagne, 2020 WL 1640152, at *4.

### 3.  Consideration of the § 3553 (a) Factors

Even if Roney had demonstrated extraordinary and compelling reasons for a

sentence reduction (which he has not), this Court would find that those reasons are

outweighed by consideration of the § 3553 (a) factors and that Roney's original sentence

---

[10] See https://www.bop.gov/coronavirus (last visited May 28, 2020).

[11] See https://www.bop.gov/coronavirus (last visited May 28, 2020).

[12] Indeed, as a federal medical center, FMC Rochester is particularly well positioned to provide medical care if Roney becomes ill.  See Korn, 2020 WL 1808213, at *8 (denying compassionate release to defendant housed at federal medical center complex in part due to ready availability of medical care).

would be undermined by a sentence reduction.  <u>See</u> 18 U.S.C. § 3582 (c)(1)(A) (requiring consideration of the applicable § 3553 (a) factors); <u>see also</u> Ebbers, 2020 WL 91399, at *7.  The § 3553 (a) factors include, *inter alia*, the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from future crimes by the defendant; and the need to avoid unwarranted sentencing disparities.  <u>See</u> 18 U.S.C. § 3553 (a).

Roney admitted to possessing 512 images and four videos of child pornography on 12 CD/DVDs, one external hard-drive, and 2 floppy disks.  (Plea Agreement, Docket No. 21, ¶ 7.)  These images and videos depicted sadistic and masochistic conduct and depictions of violence involving prepubescent children younger than 12 years of age.  (<u>Id.</u>) And Roney engaged in this conduct after previously having been convicted of sexually abusing a minor.  (<u>Id.</u>)

For this serious criminal conduct, this Court imposed a 168-month sentence, which was 20 months below the highest end of the guideline range.   That is a fair, just, and reasonable sentence which, in this Court's view, would be severely undermined by a reduction to time served.  Such a reduced sentence would not reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, or protect the public from future crimes by the defendant.  <u>See</u> 18 U.S.C. § 3553 (a).  Such a reduction would also result in unwarranted sentencing disparities.  <u>Id.</u> Accordingly, consideration of the § 3553 (a) factors strongly counsels against reducing Roney's sentence.

### 4.  Consistency of a Reduction with U.S.S.G. § 1B1.13

Finally, even if Roney had demonstrated extraordinary and compelling reasons for a sentence reduction that are not outweighed by consideration of the § 3553 (a) factors (which he has not), this Court would find that a sentence reduction is not consistent with U.S.S.G. § 1B1.13.  See 18 U.S.C. § 3582 (c)(1)(A) (requiring that any sentence reduction be consistent with applicable policy statements issued by the Sentencing Commission); U.S.S.G. § 1B1.13 (2).  This inquiry requires a determination as to whether the defendant poses a danger to the safety of any person or to the community if released.

Roney argues that he poses no danger because he has served a decade in prison and will be subject to supervised release conditions when released.  He also notes that he is presently confined to a wheelchair.  The government maintains that, given his history, Roney remains a danger to the community.  This Court agrees with the government.

In addition to possessing disturbing images and videos of child pornography, Roney has a history of sexually abusing minors.  In 1994, Roney was convicted of sexual abuse in the second degree after he admitted to molesting his friend's 10-year-old daughter.  (PSR, ¶¶ 47, 84.)  This conviction made Roney a Level 1 sex offender with reporting requirements, which Roney failed to properly abide by, resulting in a conviction for failing to properly register in 2008.  (PSR, ¶ 48.)  Roney has also been accused of multiple instances of sexual misconduct with minors, including abusing a five-year-old boy and displaying naked pictures of himself to his step-niece and step-nephew.  (PSR, ¶¶ 50, 72.)  In addition, upon learning of the charges in this case, Roney's former stepdaughter reached out to federal prosecutors to report that Roney repeatedly sexually

15

abused her when she was a minor.  (PSR, ¶¶ 76-77.)

Given the nature of Roney's conviction and his history of sexual misconduct with minors, this Court finds that he remains a danger to the community if released.  A sentence reduction is therefore precluded on this basis as well.  See United States v. Lebrecht, 1:16-CR-166 EAW, 2020 WL 2519721, at *3 (W.D.N.Y. May 18, 2020) (denying compassionate release to a child pornography defendant due, in part, to the danger the defendant poses to the community as demonstrated by his on-line chats and other underlying offense conduct).

## IV. CONCLUSION

For all of the reasons stated above, this Court finds that a sentence reduction under 18 U.S.C. § 3582 (c)(1)(A)(i) is not warranted.  Roney's motion will therefore be denied.

## V. ORDERS

IT HEREBY IS ORDERED, that Roney's Motion for Sentence Reduction (Docket No. 56) is DENIED.

FURTHER, that defense counsel is directed to complete the record by filing Roney's medical records under seal within 10 days of the entry date of this decision pursuant to this Court's Order (Docket No. 58).

SO ORDERED.


Dated:       June 2, 2020
             Buffalo, New York

                                        s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge